599 P.2d 788

**STATE of Arizona, Appellee,**

v.

**Paris Hoyt CARRIGER, Appellant.**

**No. 4457.**

Supreme Court of Arizona,
En Banc.

July 2, 1979.

Rehearing Denied Sept. 6, 1979.

John A. LaSota, Jr., Former Atty. Gen., Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Chris Wotruba, Phoenix, for appellant.

HAYS, Justice.

Paris Hoyt Carriger appeals his convictions of robbery and murder and his sentences of 99 years for the robbery and death for the murder. We have jurisdiction pursuant to the Arizona Constitution, art. 6, § 5, and A.R.S. § 13–4031. We affirm the judgments of conviction and the sentences.

Carriger raises the following assertions of error on appeal:

1. That he was erroneously denied his right to cross-examine a state's witness as to the witness' prior felony convictions;

2. That the court improperly restricted defense counsel's direct examination of a state's witness;

3. That he was denied effective assistance of counsel;

4. That certain illegally seized evidence was admitted at trial;

5. That the state failed to establish an acceptable chain of custody of certain evidence;

6. That the court improperly permitted a state's expert witness to testify regarding certain evidence;

7. That certain evidence was admitted without proper foundation;

8. That only circumstantial evidence was used to support the conviction; and

9. That the Arizona death penalty statute is unconstitutional.

Carriger first argues that the court improperly precluded the defense from thoroughly cross-examining a state's witness. The record does not support Carriger's claim.

■ The state moved in limine to restrict the defense attorney from cross-examining a state's witness as to prior bad acts not resulting in a conviction. The motion also sought to forbid defense counsel from questioning the witness about prior felony convictions in the event the state should "draw the sting" by introducing the prior conviction evidence on direct. Our study of the record indicates that the court granted that part of the motion regarding the prior bad acts but did not rule regarding the state's request to limit defense cross-examination if the state chose to draw the sting. The next day the state asked the court to amend its ruling—which precluded cross-examination of the witness as to all prior bad acts— and allow the defense to cross-examine as to a prior burglary for which the witness had received immunity in exchange for his testimony against Carriger. The court amended its ruling to allow such cross-examination and *also* ruled that defense counsel could cross-examine on the prior felonies even though the state chose to draw the sting. Nonetheless, counsel failed to do so. Counsel's failure to avail himself of the opportunity to cross-examine on the prior felonies, whether intentional or unintentional, is binding on Carriger in the absence of such prejudice as to deny him a fair trial. *See State v. Kelly*, 597 P.2d 177 (Ariz.1979). Since all of the admissible facts relating to the convictions had been introduced into evidence on direct, defendant was not prejudice by his counsel's omission.

■ After the state's witness had stepped down, defense counsel asked the court to clarify its ruling on counsel's right to cross-examine on the prior felonies. The court explained that counsel could have cross-examined on the prior felonies. Counsel then called the witness and sought to examine him on direct regarding the prior felonies. Sustaining the state's objection, the court precluded questioning regarding matters that counsel could have explored previously but had neglected to do so. We find no error. We hold that the court, in its sound discretion, may limit the scope of questioning on direct examination of a witness, who has already been examined on direct and cross, to preclude matters that could have been explored previously but were not. *See State v. Delvecchio*, 110 Ariz. 396, 403–04, 519 P.2d 1137, 1144–45 (1974).

■ Carriger next contends that since his counsel failed to cross-examine the witness on the prior convictions, he was denied ef-

fective assistance of counsel. We do not agree. Even applying the "reasonably competent attorney" standard adopted in *Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978), we note that the ultimate question remains whether any error by counsel "materially affected the deliberations of the jury." *Id.* at 1332.

We do not believe counsel's omission could have materially affected the deliberations of the jury. The jury was informed of the number, nature, date, and place of each of the prior felony convictions. The only effect of counsel's omission was that the jury was not told of the convictions twice. Carriger was not denied effective assistance of counsel.

■ Upon Carriger's arrest the police seized all the property found on his person, including two keys, and placed it in a police property locker. About 97 days after the arrest the police removed the keys and found that they fit a briefcase in which property stolen from the jewelry store was found. Prior to trial the defense attorney moved to suppress the keys alleging that a search warrant was required. The court denied the motion.

The Supreme Court, in *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), faced the same issue. There, a defendant was arrested one evening and the next morning his clothing was seized without a warrant. In approving the conduct, the court cited its earlier opinion in *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), and held that since the defendant and his clothes were in custody, the seizure was reasonable and the clothes were admissible. *Id.* 415 U.S. at 806–07, 94 S.Ct. at 1238–39, 39 L.Ed.2d at 777. The Court further indicated:

> [O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant *even though a substantial period of time has elapsed between the arrest and .  . the taking of the property for use as*

*evidence .  .  .. This is true when the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial.* (Emphasis added.) *Id.* at 807, 94 S.Ct. at 1239, 39 L.Ed.2d at 778.

The Court concluded by saying that this type of search and seizure will be upheld if it is done within a reasonable time following arrest. *Id.* at 808–09, 94 S.Ct. at 1239–40, 39 L.Ed.2d at 778.

The Ninth Circuit in *United States v. Oaxaca*, 569 F.2d 518 (9th Cir.), *cert. denied*, 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978), reviewed a case with similar facts. At the time of a defendant's arrest, certain clothing was seized and placed in the police property room from which it was later removed without a warrant and used at trial. The court held that once the clothing was legally in the custody of the police, it could be removed or transferred without benefit of official process. *Id.* at 523. The court also found that shoes not taken from the defendant at the time of arrest could legally be taken from him 60 days after arrest since both the defendant and his shoes were in custody. The court found no great significance in the length of the delay since the property had been continuously in the custody of the police. *Id.* at 524. We agree with *Oaxaca*.

■ Carriger next claims that the keys should not have been admitted into evidence since the state failed to establish a satisfactory chain of custody. More specifically, the computer record of the property indicated only one key had been seized at the time of arrest. We find no error.

The arresting officer testified at trial that he had taken two keys from Carriger when he was arrested, that he gave the keys to other police personnel for safekeeping after placing them in a marked envelope, and that the two keys about which he was being questioned at trial were the same type keys seized from Carriger. An-

other officer testified that the keys he removed from Carriger's property in the police property room and later used to unlock the briefcase containing stolen property were the same keys as those offered for admission at trial. We find that an adequate chain of custody was shown.

Carriger next argues that an expert should not have been permitted to testify regarding bloodstains on defendant's shoes which may have been animal or human, because, if animal, the evidence was immaterial and, if human, the possible prejudicial effect therefrom outweighed any probative value.

At trial, a criminalist testified that he had detected bloodstains on defendant's shoes, that the size of the stains was consistent with blood splatters, and that he could not determine whether the stains were caused by animal or human blood. Other testimony showed that the shoes had been recovered where the defendant had thrown them following the crime, that the shoes belonged to him, and that he had worn them the day of the crime. An expert also testified, based on his examination of a photograph of the scene of death and the victim's body, that the assailant probably would have had blood splattered on his shoes. Other testimony showed that the defendant had killed a rabbit several days before and that blood may have been shed in defendant's presence.

■ At the outset, we are not inclined to hold that evidence of the presence of blood is not admissible unless it can be determined that the blood is human. *Taylor v. State*, 361 So.2d 1189, 1191–92 (Ala. Cr.App.1978). The next question is whether the prejudicial effect of the evidence outweighs its probative value. *State v. Briggs*, 112 Ariz. 379, 382, 542 P.2d 804, 807 (1975). That determination falls within the broad discretion of the trial court and will not be reversed on appeal absent clear abuse of discretion. *Id.* We do not think the probative value of the evidence was outweighed by its possible prejudicial effect.

The expert's testimony along with the other testimony at trial constitutes probative circumstantial evidence that Carriger was present when the victim was killed. Although the probative value of the evidence may have been weakened by the inability of the expert to testify that it was human blood, so was the possible prejudicial effect. A determination of the weight merited by such testimony was therefore properly left to the jury to make, in light of all the testimony before it. We find no abuse of discretion.

■ Carriger also alleges that a diamond and a watch were improperly admitted into evidence without establishing that they were actually taken from the jewelry store. We find this argument without merit. In *State v. Blazak*, 114 Ariz. 199, 560 P.2d 54 (1977), we held that demonstrative evidence may be linked to the crime by other such evidence or by testimony at trial, and when it is, any defect in the identification of the evidence goes to the weight thereof. Here, a witness testified that Carriger told him he robbed the jewelry store. The witness also testified that he saw the stolen jewelry with price tags attached thereto and that Carriger gave him some of the loot including the diamond and the watch. The witness identified the diamond and watch as the ones given to him by Carriger. All of this testimony constitutes strong circumstantial evidence that the jewelry was taken from the jewelry store. The fact that no one could positively identify the diamond and watch as part of the jewelry store inventory goes to the weight given to the evidence, not its admissibility. We find no error.

■ Carriger contends that since his conviction was based solely on circumstantial evidence, it must be reversed. Even assuming all the evidence was circumstantial, we have held that a criminal conviction may be supported by such evidence alone. *State v. Green*, 111 Ariz. 444, 532 P.2d 506 (1975).

■ Finally, Carriger challenges in the broadest terms the constitutionality of our

death penalty statute, A.R.S. § 13–454. In *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 480 (1979), we recognized the continuing constitutionality of A.R.S. § 13–454, holding only subsection (F) unconstitutional. We find *Watson* controlling.

The judgments of conviction and the sentences are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.