## 34832. BOWDEN v. ZANT.

HALL, Justice.

This is Jerome Bowden's habeas corpus appeal. He is under a sentence of death for murder. The Butts County Superior Court conducted a hearing on his petition and issued a comprehensive order which follows hereafter as an appendix to this opinion. The numbered divisions of that order correspond to the enumerations of error on this appeal, and this opinion will only supplement or supercede portions of that order where needed.

1, 2. Bowden's enumerations of error 1 and 2 alleging ineffectiveness of trial counsel are without merit for the reasons stated in Division 1 of the order, and also for these additional reasons. Leading defense counsel, Mr. Oates, was assisted by at least two other attorneys. In addition to Mr. Oates' efforts, Mr. Cain, who was subsequently named Public Defender, visited Bowden before trial, and assisted in the conduct of the defense at trial. Mr. Collins, an attorney specalizing in criminal law, met with Bowden at least once, assisted with pretrial motions, participated in the hearing on the motion for psychiatric examination and cross examined witnesses, gave the closing argument of the guilt phase, and participated in the appeal and the application for certiorari.

The standard of effectiveness of counsel which Bowden urged through an expert witness at the habeas hearing, is more stringent than that which the law requires. For example, the law does not require that defense counsel pay out of his own pocket for expert psychiatric witnesses for an indigent defendant. Nor is it required for effectiveness in a death case that attorneys spend three to four hours of investigation for *each* prospective juror, in preparation for voir dire.

Bowden's expert also testified that trial counsel erred in failing to push more aggressively on the issue of possible mental defect or insanity. We find no ineffectiveness here. Trial counsel testified at the habeas hearing that he diligently sought evidence of mental incapacity of whatever sort; that on the motion for psychiatric examination concerning the special insanity plea he presented everything that he had; that he

personally thought it fell short of the required level; and that he thought the trial judge correctly denied the motion. We find no indication that there existed evidence of incapacity which counsel failed to uncover.

We find that Bowden's trial counsel easily met the test of reasonably effective counsel set out in *Pitts v. Glass,* 231 Ga. 638, 639 (203 SE2d 515) (1974) and recently discussed in *Jones v. State,* 243 Ga. 820 (1979).

Claims of ineffectiveness in certain particulars of strategy are without merit for reasons which will be further stated in Divisions 3, 8, 9, 11 and 13. The claim that counsel failed to investigate witnesses is without specificity and without merit.

3. In enumeration of error 3, Bowden raises seven claims of error, some of which have never been presented before. As the habeas court noted, on the appeal we found no error in the Graves statement transaction. It suffices here to note that the Graves statement was *not* admitted into evidence, and therefore assertions here that it was inadmissible are irrelevant. Subparts A and C of this enumeration are without merit for reasons determined on the appeal. Parts B, D and E are answered by the fact that the statement was not in evidence. Parts F and G concerning jury instructions are raised for the first time here and will not be considered. This enumeration of error is without merit.

4, 5, 6, 7. Enumerations of error 4, 5, 6 and 7 are without merit for the reasons stated by the habeas court. *Ross v. Hopper,* 240 Ga. 369, 370 (240 SE2d 850) (1977).

8. Enumeration 8 is without merit for the reason stated by the trial court with respect to juror Pue. We have reviewed the voir dire transcript concerning jurors Storey, Matlock, and Godwin, and we find that none of them was erroneously excluded under Witherspoon v. Illinois, 391 U. S. 510 (1968) and its progeny. See Lockett v. Ohio, 438 U. S. 586 (1978); Davis v. Georgia, 429 U. S. 122 (1976); Boulden v. Holman, 394 U. S. 478, 481-484 (1969).

9. Enumeration 9 is without merit for the reason stated by the habeas court. See generally Drope v. Missouri, 420 U. S. 162 (1975); Chenault v. Stynchcombe, 546 F2d 1191 (5th Cir. 1977); Bruce v. Estelle, 483 F2d

1031, 1037 (5th Cir. 1973). Bowden's argument here that he should have been provided a state-paid psychiatrist to attempt to show his mental characteristics in possible mitigation of punishment is without legal basis under the authorities cited in Division 16, infra.

10. Enumeration 10 asserts error in the closing arguments in the sentencing phase, and in the fact that in the original appeal a transcript of the closing arguments was not included in the record and was not considered by this court on its mandatory sentence review (see Code Ann. § 27-2537). A transcript was provided following the habeas application and is a part of the record on this appeal.

Considering the absence of the transcript of closing arguments on the original appeal, the duty falls upon counsel for appellant to bring before this court on appeal a record on which he can show error. On Bowden's appeal, counsel did not procure a transcript of these arguments and raised no enumeration of error respecting them. *Dungee v. Hopper,* 241 Ga. 236 (244 SE2d 849) (1978).

However, on this appeal we have reviewed the arguments and find no error. The prosecutor's argument was permissible, and no trial objection was made to it by any of the three defense attorneys. We find no error with respect to it. Bowden erroneously asserts that the defense attorney was denied a full argument on the subject of mitigation. He was attempting to argue that Bowden was insane and that the state had denied him the right to prove it. That was untrue, and the trial court committed no error in sustaining an objection to that line of argument.

This enumeration of error is without merit.

11. Enumeration 11 is without merit for the reason stated by the habeas court. Additionally the argument made on this habeas appeal is without merit because it misconstrues the evidence. Bowden urges here that there is no evidence he committed murder because all the evidence showed the victim was dead before he stabbed her; but this is irrelevant because she died from blows on the head and his confession which went to the jury included his statement that he hit her twice with his gun

before stabbing her. This enumeration is frivolous.

12. Enumeration 12 is without merit for the reason stated by the habeas court.

13. Enumeration 13 is without merit because it is founded on two cases, *Futch v. State,* 90 Ga. 472, 481 (16 SE 102) (1892) and *Owens v. State,* 120 Ga. 296 (48 SE 21) (1904), which involved incriminating statements which contained legal excuse or justification; Bowden's statement did not.

14. The sentencing charge meets our test under *Spivey v. State,* 241 Ga. 477 (246 SE2d 288) (1978) and enumeration of error 14 alleging error in this respect is without merit.

15. Enumeration of error 15 is similarly without merit. This enumeration has three parts:

A. The transcripts show that although, as Bowden contends, the defense attorney was not given written notice of the former convictions which the state intended to introduce in aggravation against him, he did receive the "clear notice" required by our decisions construing Code Ann. § 27-2503 (a). See *Potts v. State,* 241 Ga. 67, 83-84 (243 SE2d 510) (1978); *Hewell v. State,* 238 Ga. 578 (234 SE2d 497) (1976); *Gates v. State,* 229 Ga. 796 (194 SE2d 412) (1972).

B. Bowden asserts that he was not given "adequate notice" that the state would seek the death penalty. Bowden's habeas attorney admitted that no law requires the state to notify a defendant that it will seek the death penalty. Moreover, his trial attorney testified at the habeas hearing that he had been told by the district attorney shortly after the arraignment that the state would push for a death sentence. This argument is groundless.

C. Bowden's final argument under this enumeration is that prior to trial the state must serve on defendant a written notice of which of the aggravating circumstances listed under Code § 27-2534.1 the state intends to try to prove, and that this notice is required by due process and by Code Ann. § 27-2503.

We disagree. We know of no authority requiring such a result under due process concepts. For example, aggravating circumstances need not be alleged in an

indictment. *Dungee v. Hopper,* 241 Ga. 236, supra.

Considering Code § 27-2503 (a), that section states in pertinent part, "Provided, however, that only such *evidence* in aggravation as the state has made known to the defendant prior to his trial shall be admissible [in the presentence hearing in death cases]." (Emphasis supplied.) Here, at Bowden's presentence hearing, no *evidence* was introduced except Bowden's prior record, notice of which to defendant we have held adequate, supra. Therefore, the argument sought to be made under this statute has no relevance to Bowden. However, because the argument could at some time be raised on behalf of other defendants, we note here that Code Ann. § 27-2503 concerns *notice of evidence* which is being admitted for the first time at a *presentence hearing,* and has absolutely nothing to do with the idea of giving *notice of an attempt* to prove aggravating circumstances during the *guilt phase* of trial. See *Smith v. State,* 236 Ga. 12, 20 (222 SE2d 308) (1976); *Eberheart v. State,* 232 Ga. 247, 253-254 (206 SE2d 12) (1974), remanded for resentencing, 433 U. S. 917 (1977). (If *evidence* in support of an aggravating circumstance were sought to be admitted for the first time during the presentence hearing, arguably the statute would require notice of that *evidence* to be given to defendant prior to trial.)

No error in this respect occurred at Bowden's trial.

16. The final enumeration of error, 16, asserts error in the habeas court's denial of funds to pay expert witnesses and investigators to assist Bowden in his habeas petition. Contrary to Bowden's assertions in his brief, his legal claims do not have a "complex nature," nor is there a "large number of unresolved factual questions" requiring state paid experts. The court did not err in this ruling. *Harris v. Hopper,* 243 Ga. 244, 245 (253 SE2d 707) (1979); *Westbrook v. State,* 242 Ga. 151 (249 SE2d 524) (1978). See Gibson v. Jackson, 578 F2d 1045 (5th Cir. 1978). Compare Bounds v. Smith, 430 U. S. 817 (1977).

All enumerations of error are without merit and the habeas court did not err in denying the relief sought.

*Judgment affirmed. All the Justices concur, except Hill, J., who concurs specially.*

ARGUED JULY 9, 1979 — DECIDED SEPTEMBER 6, 1979 — REHEARING DENIED SEPTEMBER 25, 1979.

*Nelson Jarnagin,* for appellant.

*Arthur K. Bolton, Attorney General, Susan V. Boleyn, Assistant Attorney General, William J. Smith, District Attorney,* for appellee.

HILL, Justice, concurring specially.

In enumeration 15 the defendant complains (1) that he was not given the required notice of prior criminal convictions and pleas of guilty introduced into evidence by the state in the sentencing phase of trial in aggravation of punishment, (2) that he was not given adequate notice that the state would seek the death penalty, and (3) that he was not given notice of the statutory aggravating circumstances on which the state would rely in seeking the death penalty. Supplementing this last argument, the defendant contends that Code Ann. § 27-2503 requires that notice of statutory aggravating circumstances be given in death cases (and that it should if it does not). Supplementing his first argument, he contends that the habeas court erred in finding harmless error in the admission of his prior convictions.

Code Ann. § 27-2503 (Ga. L. 1974, pp. 352, 357) provides the starting point for our consideration. It provides (in pertinent part): "(a) Except in cases in which the death penalty may be imposed, upon the return of a verdict of 'guilty' by the jury in any felony case, the judge shall dismiss the jury and shall conduct a presentence hearing at which the only issue shall be the determination of punishment to be imposed. In such hearing the judge shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant, or the absence of any prior conviction and pleas: Provided, however, that only such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible . . .(b) In all cases in which the death

penalty may be imposed and which are tried by a jury, upon a return of a verdict of guilty by the jury, the court shall resume the trial and conduct a presentence hearing before the jury. Such hearing shall be conducted in the same manner as presentence hearings conducted before the judge as provided in subsection (a) of this section. Upon the conclusion of the evidence and arguments, the judge shall give the jury appropriate instructions, and the jury shall retire to determine whether any mitigating or aggravating circumstances, as defined in section 27-2534.1, exist and whether to recommend mercy for the defendant . . ."

The critical provision is that the state can only use in aggravation of punishment in either death or non-death cases such "evidence" as it has "made known" to the defendant prior to the commencement of trial, including his record of prior convictions and pleas. The statute relates to evidence, not points of law (e. g., statutory aggravating circumstances authorizing the death penalty), and it does not require that such knowledge be transmitted in writing. However, the "fact that such notice was given should be clear and not cloudy . . ." *Gates v. State,* 229 Ga. 796 (4) (194 SE2d 412) (1972).

It would be preferable if notice were given in writing as to the evidence *and* statutory aggravating circumstances to be relied upon by the state in aggravation in seeking the death penalty. Giving written notice of the statutory aggravating circumstances would be notice that the state intends to seek the death penalty. However, the question here is whether such notices were required in this case. (It would appear that the state would have to give notice of the prior conviction if it intended to seek the death penalty based on the defendant's prior record of conviction for a capital felony. Code Ann. § 27-2534.1 (b) (1). In this case, the defendant's prior convictions were felonies but not capital felonies, and the state did not seek the death penalty by use of his prior convictions to show this statutory aggravating circumstance.)

Thus far, examination of Code Ann. § 27-2503 has shown that it does not necessarily require that notice be given of the statutory aggravating circumstance or

circumstances to be relied upon by the state in seeking the death penalty.

The defendant was indicted for the armed robbery (by use of a knife and a blunt instrument) and murder (by use of a blunt instrument) of Kathryn Stryker, and aggravated assault on Wessie Jenkins and burglary of her home, all occurring on the same date. The punishment for murder is death or life imprisonment. Code Ann. § 26-1101 (c). Thus, the defendant was on notice (the indictment) that the state could seek the death penalty. His counsel concedes that the district attorney told him, "over coffee," that the state would seek the death penalty. No additional notice is required.

Moreover, the statutory aggravating circumstances relied upon by the state and on which the jury based the death penalty were that the murder occurred while the offender was engaged in the commission of another capital felony, the armed robbery of Mrs. Stryker, and in the commission of burglary. Code Ann. § 27-2534.1 (b) (2). Both of these aggravating circumstances were set forth as separate crimes in the indictment. Hence, in this case, the defendant cannot complain that he had no notice as to the statutory aggravating circumstances relied on by the state. Counsel's statement in his brief that it is impossible to determine from an indictment whether there are aggravating circumstances accompanying a murder is incorrect in this case.

Finally, the trial transcript shows that defense counsel denied having received adequate notice of prior convictions at a meeting in the district attorney's office (T. T. 608, cited by the habeas judge as being of questionable clarity), but admitted unequivocally having received oral notice of those prior convictions at a motion hearing (T. T. 611). At trial, his complaint boiled down to the fact that he was not given copies of the prior pleas (T. T. 611). Because he was given notice of prior convictions sufficient to satisfy the statute, Code Ann. § 27-2503, supra, we need not reach the question of harmless error.

For the reasons stated above, defendant's enumeration of error 15 does not show grounds for reversal.

APPENDIX.

## IN THE SUPERIOR COURT OF BUTTS COUNTY
## STATE OF GEORGIA

JEROME BOWDEN,
      PETITONER           CIVIL ACTION NO. 3951

        V.                HABEAS CORPUS

WALTER ZANT, WARDEN,
GEORGIA DIAGNOSTIC AND
CLASSIFICATION CENTER,
      RESPONDENT

### ORDER

Jerome Bowden filed a Petition for Writ of Habeas Corpus in Butts Superior Court alleging that he is under a death sentence from Muscogee County and that his detention and the imposition of that sentence is unconstitutional on various grounds which are alleged in the Petition.

Jerome Bowden was tried and convicted for Murder, Armed Robbery, Aggravated Assault, and Burglary. On the Murder conviction, the jury set his sentence at death by electrocution. The conviction for Murder and imposition of the death penalty were affirmed by the Supreme Court of Georgia. *Bowden v. State,* 239 Ga. 821 (1977).

The Court will rule on the counts of the Petition in the order in which they appear.

1.

In Count I, Petitioner claims that, in his trial in Muscogee Superior Court, he was denied the effective assistance of counsel that is required by the Sixth and Fourteenth Amendments to the Constitution of the United States. Petitioner was represented at trial by Samuel Oates, who was assisted at various times by his law partner, Mr. Collins, Bill Cain, the Public Defender, and Frank Martin. In the actual trial of the case, Mr. Oates served as chief counsel and was assisted by Mr. Cain. Although several issues were raised during direct and cross-examination of Mr. Oates upon hearing on this Petition, there was no serious contention that another

lawyer could have produced a different result on the question of guilt or innocence. In fact, Petitioner's own expert witness testified that he did not think there was any substantial question of ineffectiveness on the part of trial counsel in the guilt-innocence phase of the trial. (See H.T. [habeas transcript] at pp. 98-99). Accordingly, the only question for decision is whether Petitioner's trial counsel was so ineffective on the issue of punishment that the right of Petitioner to the effective assistance of counsel under the Sixth and Fourteenth Amendments was violated.

Petitioner contends, through testimony of his expert witness and through argument of his counsel, that trial counsel did not understand the nature of the bifurcated procedure in a death penalty case and did not prepare adequately for the sentencing phase of the trial. Petitioner himself was the only witness called during the sentencing phase. (See T.T. [trial transcript] pp. 620-621). Petitioner now complains that his trial counsel should have laid the groundwork for the question of sentence beginning with the voir dire (see H.T. p. 71), and that a psychologist should have been called as a witness during the sentencing phase. Petitioner's counsel had been a member of the Bar for approximately one year at the time he was appointed to represent Petitioner. During his brief practice before that time, Petitioner's counsel had tried several criminal cases, including a few felonies. (See H. T., pp. 115-116). While it may be true that Petitioner's counsel may not have done the best job possible in representing Petitioner, it is doubtful that there are many lawyers available who could have done a better job. According to Petitioner's own expert witness, there may be relatively few lawyers in Georgia capable of doing the highest quality job in a death penalty case. (See H.T., p. 93). Accordingly, to hold in this case that Petitioner's trial counsel was so ineffective that Petitioner's Sixth and Fourteenth Amendment rights were violated would, in effect mean that few, if any, death penalty cases could stand the scrutiny of the Sixth and Fourteenth Amendments. While it is perhaps unfortunate that the Court put this young lawyer in the position of assuming the responsibility of a case of such magnitude and

complexity, this Court finds nothing to indicate that trial counsel's representation was not effective within the meaning of the Constitution. Accordingly, Petitioner's claim that he was denied the effective assistance of counsel is without merit.

2.

Count II of the Petition also involves a Sixth Amendment claim. It is without merit for the same reasons indicated above as to Count I.

3.

In Count III, Petitioner alleges that he was denied a fair trial when the "confession" of Jamie Graves, a juvenile, implicating Mr. Bowden was indirectly but erroneously admitted into evidence. The Supreme Court of Georgia specifically addressed this contention upon direct appeal and rejected it. Accordingly, this habeas corpus court cannot review this issue further. See *Bowden v. State,* 239 Ga. 821, 827 (5) (1977).

4.

Count IV of the Petition alleges that Petitioner was convicted solely on the basis of his own confession, uncorroborated by other competent evidence. The Supreme Court of Georgia has already concluded that the verdict was amply supported by the evidence and was not contrary to law and equity. Accordingly, this habeas corpus court cannot entertain this issue. See *Bowden v. State,* supra, at p. 824 (1).

5.-6.

Counts V and VI of the Petition involve a claim that the jury verdict as to guilt and the imposition of the death sentence violated Petitioner's constitutional rights because the jury was selected from a panel from which all persons having conscientious or religious scruples against capital punishment were systematically excluded. Qualification of the jury, both generally and as to the death penalty issue, was conducted in accordance with *Witherspoon v. Illinois,* 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. 2d 776 (1968), and its progeny. (See T.T., pp. 7-100). Accordingly, Counts V and VI are without merit.

7.

In Count VII, Petitioner claims that his conviction

and death sentence violate his Constitutional rights because he was convicted and sentenced to die by a jury that did not reflect a representative cross-section of the community, which was prosecution prone, and which was biased in favor of the use of the death penalty against black persons. Petitioner has produced nothing to substantiate such a claim, and it is without merit.

8.

Count VIII claims a violation of the *Witherspoon* principle as to juror Charlotte S. Pue and others on the ground that no opportunity was afforded defense counsel to attempt to rehabilitate the jurors' beliefs concerning ". . . their ability to follow the law as given by the judge. . ." During the qualification of Ms. Pue, she stated unequivocally that she would not impose the death penalty regardless of what the evidence in the case might show. Following this statement by Ms. Pue, defense counsel did object that a proper foundation had not been laid for striking her for cause. Thereupon, Ms. Pue spoke up again and said: "I am a Seventh Day Adventist and I don't believe in it." After juror Pue was then stricken for cause, there is no indication that defense counsel attempted to ask any further questions or, that any would have been called for. Accordingly, the claim in Count VIII is not borne out factually by the transcript and is without merit. (See T.T., pp. 39-41).

9.

In Count IX, Petitioner alleges that he was denied a fair trial because the trial court overruled his motion for a psychiatric examination to aid him in pursuing his special plea of insanity. An evidentiary hearing was held on the issue of Petitioner's motion for the appointment of a psychiatrist to examine him. Petitioner's sister, niece, and trial counsel (Mr. Oates) testified in support of his motion. The testimony of Petitioner's relatives centered around assertions that he had "cussed" the children in the family (see T.T., p. 6, p. 31), that he would lie on the bed and rock for hours at the time (T.T., p. 31), and that he had been unable to give a clear sequence of events surrounding the alleged crime to his trial counsel (T.T., pp. 40—45). At the habeas corpus hearing, Petitioner's trial counsel testified that the special plea of insanity and

motion for psychiatric examination were filed, at least partially, for purposes of delay (see H.T., p. 124). Further, Petitioner's trial counsel testified that Petitioner knew what he was charged with (H.T., p. 127) but maintained that at the time of trial he (Mr. Oates) and Petitioner were no further along in formulating a defense than they were on the first day they discussed the matter. When the trial judge overruled the motion for appointment of a psychiatrist (T.T., p. 56), trial counsel withdrew the special plea of insanity because, according to trial counsel, he had nothing to offer in support of the plea. (H.T., p. 128). A consideration of the relevant portions of the trial transcript with the testimony at the habeas corpus hearing lead ineluctably to the conclusion that the trial judge did not abuse his discretion in denying the motion for psychiatric examination. Further, the decision of trial counsel to abandon his special plea of insanity thereafter is both understandable and logical. No constitutional rights of Petitioner were violated by the overruling of his motion for the appointment of a psychiatrist or by his counsel's decision to withdraw his special plea of insanity.

## 10.

Count X claims that Petitioner's death sentence is unconstitutional in that it was imposed under the influence of passion, prejudice, and other arbitrary factors. Further, it is alleged that the closing arguments during the sentencing phase of Petitioner's trial were not recorded and were not available to the Supreme Court of Georgia for its mandatory review upon direct appeal. It is true that the closing arguments during the sentencing phase were not transcribed and made a part of the original record in the case. It is a matter of concern to this Court that the record on direct appeal did not contain this portion of the trial which would appear to be essential to the Supreme Court fulfilling its duty under Ga. Laws 1973, pp. 159,165 (*Ga. Code Ann.* § 27-2537). However, in this habeas corpus proceeding the Respondent has located a recordation of the closing argument during the sentencing phase of the trial, and the same has been admitted into the evidence in this proceeding. Because this Court does not have before it all the information

required for a sentence review under *Ga. Code Ann.* § 27-2537, it is impossible to determine whether the sentence review of the Supreme Court upon direct appeal would be altered by this missing information. Because this Court sees nothing in the closing arguments during the sentencing phase which would indicate that the death sentence was returned under the influence of passion, prejudice, or any other arbitrary factor, this Court holds that no substantial rights of Petitioner were denied as a result of this omission from the record which was sent to the Appellate Courts in connection with the direct appeal. However, this Court hopes that the Supreme Court of Georgia, should it review this Order, will conduct a de novo review of the death sentence considering the closing arguments of counsel during the sentencing phase as they appear in the record of this proceeding.

11.

Count XI claims that Petitioner's conviction and sentence are unlawful on grounds which amount to an additional assertion that the verdict is not supported by the evidence. This question has been decided by the Supreme Court of Georgia. *Bowden v. State, supra,* at p. 824-825.

12.

Count XII of the Petition attacks the imposition of the death penalty upon Petitioner on the grounds that the same violates the Eighth and Fourteenth Amendments to the Constitution of the United States. This general opposition to the imposition of the death penalty has been decided adversely to Petitioner by the Supreme Court of this State and by the Supreme Court of the United States and is without merit.

13.

Count XIII claims that Petitioner's trial counsel failed to render effective assistance by failing to object to a portion of the Court's charge. Petitioner has offered nothing in support of this contention, and a review of the charge complained of indicates that it is a correct statement of the law. (See T.T. 589-591).

14.

In Count XIV, Petitioner alleges that his constitutional rights were violated because the trial judge

failed properly to charge the jury on the consideration of aggravating and mitigating circumstances under applicable Georgia statutes. After reviewing the charge of the trial court during the sentencing phase of the trial (T.T., pp. 612-616; 621-622), this claim of Petitioner is found to be without merit. The charge of the trial court during the sentencing phase was an accurate statement of the law and one which fully informed the jurors that they could consider anything in aggravation and in mitigation, that they should impose the death penalty only if one or more aggravating circumstances were shown beyond a reasonable doubt, and that they could recommend a life sentence even though they found one or more aggravating circumstances to have been proved beyond a reasonable doubt.

15.

In Count XV, Petitioner claims that his death sentence is unlawful because the prosecution failed ". . . to adequately give notice to the defendant or his attorney prior to the trial of the evidence to be used in aggravation . . ." Prior to Petitioner's trial, no written notice of aggravating circumstances was ever served on Defendant's counsel or filed with the Clerk. While the prosecutor did orally inform trial counsel that prior convictions would be used in aggravation (see H.T., p. 169 to 173), no notice, written or otherwise, was ever given concerning the aggravating circumstance which was ultimately presented to and found by the jury in this case: (That the offense of Murder was committed while the offender was in the commission of another capital felony, to-wit: Armed Robbery.) This Court is not aware of any case in which the Supreme Court of Georgia has decided the question of whether the notice requirement of *Ga. Code Ann.* § 27-2503 means only actual notice to defense counsel or whether the same must be reduced to writing and made a part of the record in the case. In a death penalty case, the Supreme Court of Georgia has, by way of dicta, suggested that the notice of aggravating circumstances must be filed with the Court. *Moore v. State,* 240 Ga. 807, 818 (1978). But it would appear that a reasonable reading of Ga. Code Sections 27-2503 and 27-2534.1 together would suggest that, in a death penalty

case, the trial judge must charge the jury on any aggravating circumstances which ". . . may be supported by the evidence . . ." (*Ga. Code Ann.* § 27-2534.1(b)) irrespective of whether the prosecutor has reduced to writing before the trial his view of what the evidence would show in this regard. While it would be helpful to the defendant in a death penalty case to know in advance what the prosecution theory of aggravation is, the statute places upon the trial judge the obligation to charge the jury on those aggravating circumstances supported by the evidence, and the trial judge could not know what is supported by the evidence until the main trial is over. Accordingly, it would be a non sequitur to say that the prosecutor is required to give written notice of aggravating circumstances prior to trial on matters which will be a part of the evidence in the main trial. The mandate of *Ga. Code Ann.* § 27-2503 concerning notice of aggravating circumstances should apply only to any prior record of a defendant. Accordingly, any other statutory aggravating circumstance in a death penalty case is not subject to the notice requirement of Code § 27-2503.

In this case, there is a question as to whether clear notice of prior convictions was given to defense counsel prior to trial. (T.T., p. 608). However, the trial judge instructed the jury that, from a consideration of the evidence heard during the main trial, they could find as a statutory aggravating circumstance that the offense of Murder was committed while engaged in the commission of another capital felony, Armed Robbery. This is the basis upon which the jury imposed the dealth penalty. (T.T., p. 624). The submission of this statutory aggravating circumstance to the jury by the Court does not require written filing with the Clerk and service upon defense counsel prior to trial. Because the jury did not find the prior convictions as a basis for imposing the death penalty, Petitioner was not harmed by any failure of the prosecutor to serve notice of same prior to trial.

Accordingly, the claim of Petitioner that his rights were violated in this regard are without merit.

WHEREFORE, after full consideration of each and every ground offered in support of the Petition for Habeas Corpus, as amended and supplemented, the same is

hereby denied. Costs are cast against the Respondent. This 10 day of January, 1979.

R. ALEX CRUMBLEY, JUDGE
SUPERIOR COURTS, FLINT
JUDICIAL CIRCUIT