### 36555. NELSON v. THE STATE.

MARSHALL, Justice.

The appellant, Gary X. Nelson, was convicted of murder, aggravated sodomy, and rape. The jury found that the murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." Code Ann. § 27-2534.1 (b)(7). The appellant was given the death penalty for the murder conviction, and he was given consecutive life sentences for the rape and aggravated sodomy convictions.

The state presented evidence at trial to the following effect:

The victim was a six-year-old girl, and the appellant and the victim's family were neighbors, living one-half block from each other.

The victim was reported missing on the evening of Sunday, February 19, 1978. On that morning, the appellant had gone to the victim's home to borrow a wrench from her stepfather, Ray McCray. There is testimony that the appellant drank some vodka at the McCray residence, and then Mr. McCray accompanied the appellant back to the appellant's house to help the appellant do some work on his Volkswagen. Around dusk, they returned to the McCrays. Mr. McCray testified that his children were playing in the yard and he pointed the victim out to the appellant, stating, "That's my little girl right here." McCray testified that the appellant replied, "Yeah, I know, that's my little buddy because she comes down to the house all

---

[1] For a companion case, see *Chandler v. Cochran,* 247 Ga. 000, post.

the time to go to the store for us." According to Mr. McCray's testimony, the appellant then went back into the McCray residence, had another drink of vodka, and then returned to his own home.

Sabrina Williams, who is eight years old, testified that she was playing with the victim around dusk on the Sunday the victim disappeared. She and the victim went to the store, but the victim did not have any money. Sabrina testified that on their way back from the store, the victim left her in order to go to the appellant's house to get some money. The victim referred to the house as "Uncle Al's house." The appellant's roommate was Alphonso Swinton. The last time Sabrina saw the victim, the victim was walking toward this house and there was a man working on a Volkswagen in the yard. A few days later, Sabrina identified the appellant from a photographic array as the man working on the Volkswagen. However, she testified at trial that the appellant was not the man.

The victim's body was discovered in a wooded area near her house on Monday, February 20th. The victim had been brutally raped, sodomized, and stabbed. A distinctive-looking knife with tape wrapped around its handle was found within several feet of the body. Seminal fluid found on the victim's coat contained a blood type which is the same blood type as the appellant's, which is blood type O. (There is evidence that 44% of the population have this blood type.) Forensic evidence established that a hair found on the victim could have come from the appellant's arm, but could not have come from the arm of the appellant's roommate, Alphonso Swinton. (There is evidence that approximately 123 people in the area would have similar hair samples.)

There is testimony that during the police investigation of the case, the appellant's girl friend, Diane Knight, identified the knife found at the scene of the murder as being the appellant's knife. An investigating police officer also testified that Diane Knight informed the police that the appellant had instructed her not to identify the knife. At trial, she repudiated her earlier statement to the police that the knife was the appellant's, and she testified that this was not the appellant's knife. However, there was testimony from another witness that this was the knife in the appellant's house. At trial, Ms. Knight also repudiated a pretrial statement which she had given to the police in which she maintained that she had been with the appellant during the day and evening of February 19. Ms. Knight testified at trial that she had not been with the appellant during this time.

The victim's stepfather testified that on Tuesday, February 21, he received an anonymous telephone call from a person whom he identified as the appellant. McCray testified that the appellant told

him that "a fellow on the east side by the name of Blue" killed his daughter. It was later determined by the police that the person identified as "Blue" could not have committed the crime.

The appellant testified at trial. He denied that he knew the victim by name or that she came to his house often. And, he denied telling this to Mr. McCray. He also denied being at the McCray residence on Sunday, February 19. However, he did admit that it was he who was working on his Volkswagen on that day. *Held:*

1. The evidence, when viewed as a whole, is sufficient to authorize a rational trier of fact to find the appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial judge did not abuse his discretion in setting bail at $10,000. See Code Ann. § 27-901; *Smith v. State,* 245 Ga. 168 (2) (263 SE2d 910) (1980); *Harris v. Hopper,* 236 Ga. 389 (224 SE2d 1) (1976).

3. The trial judge did not err in overruling the appellant's motion for acquittal on the ground that two grand juries had returned no-bills of indictment. Nor did the trial judge err in overruling his motion to dismiss for denial of the appellant's constitutional right to a speedy trial.

The appellant was arrested on May 26, 1978. On December 10, 1978, he filed a demand for indictment, and on April 4, 1979, he was ordered released from incarceration pursuant to his writ of habeas corpus for failure of the grand jury to indict him. It appears that the grand jury deferred voting on the bill of indictment against the appellant in order to permit the district attorney further time for investigation, in that a key witness, Diane Knight, could not be located. On October 3, 1979, the grand jury returned a bill of indictment against the appellant for murder. This case came on for trial on February 27, 1980.

It is true that two returns of no bills by a grand jury generally bars further prosecution for the same offense. Code Ann. § 27-702. However, a mere failure of the grand jury to indict does not constitute the return of a no bill. *Chafin v. Jones,* 243 Ga. 267 (253 SE2d 389) (1979). Accordingly, the trial judge did not err in overruling the appellant's motion for acquittal.

Nor do we find the appellant's Sixth Amendment right to a speedy trial to have been violated. Barker v. Wingo, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), sets out the factors for determining whether there has been a denial of the Sixth Amendment right to speedy trial:

(1) *Length of delay* — The length of delay between appellant's arrest and his trial was 22 months. However, during some of this time he was in jail under a conviction of involuntary manslaughter. He was

released on habeas corpus approximately 10 months prior to trial.

(2) *Reason for delay* — The reason for the delay in the return of the indictment was that a key witness could not be located. This is a legitimate reason for delay and does not constitute deliberate prosecutorial delay for tactical advantage. Cf., United States v. Marion, 404 U. S. 307 (92 SC 455, 30 LE2d 468) (1971); *Haisman v. State,* 242 Ga. 896 (2) (252 SE2d 397) (1979).

(3) *Assertion of right* — The appellant asserted his right to speedy trial by filing a demand for indictment several months after his arrest.

(4) *Prejudice* — The appellant was released approximately 10 months prior to trial, and during the approximately 10 months he was in jail, he was serving time on another charge. He has not shown any way in which his defense was impaired by the delay.

Considering all of these factors, we hold that the trial judge did not abuse his discretion in ruling that the appellant has not been denied his Sixth Amendment right to a speedy trial. See *Jackson v. State,* 244 Ga. 276 (2) (260 SE2d 15) (1979).

4. After an in-camera inspection of the prosecutor's files, the trial judge supplied the defense with all evidence found to be material under Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). In addition, the prosecutor provided the defense with all writings and tangible objects required to be produced under the appellant's Code Ann. § 38-801 (g) notice to produce. *Hamby v. State,* 243 Ga. 339 (2) (253 SE2d 759) (1979); *Brown v. State,* 238 Ga. 98 (231 SE2d 65) (1976). The appellant has not made a showing of any evidence withheld under Brady or any material which was required to be, but not, produced under the notice to produce. We find no error here.

5. Although the state is not required to serve a defendant with notice of the statutory aggravating circumstance it intends to prove, *Bowden v. Zant,* 244 Ga. 260 (15C) (260 SE2d 465) (1979), the appellant did receive notice of the state's intent to proceed under § 27-2534.1 (b) (7) here.

6. The trial judge did not abuse his discretion in overruling the motion for change of venue.

There is no evidence in the record that there was such widespread, adverse, pretrial publicity that the prospective jurors could not lay aside their opinions and render a verdict based solely on the evidence. Only 38 prospective jurors were examined before a jury was struck, and only seven of these prospective jurors were excused for being prejudiced or having a fixed opinion as to guilt or innocence. This low dismissal rate corroborates the absence of such prejudicial pretrial publicity as would require the grant of the appellant's motion

for change of venue. Murphy v. Florida, 421 U. S. 794 (95 SC 2031, 44 LE2d 589) (1975); *Tucker v. State,* 244 Ga. 721 (12) (261 SE2d 635) (1979); *Collier v. State,* 244 Ga. 553, 572 (261 SE2d 364) (1979). In addition, the prospective jurors were carefully questioned in order to ensure that the jurors selected to try the case were not prejudiced by pretrial rumors. See *Chenault v. State,* 234 Ga. 216 (5) (215 SE2d 223) (1975).

7. Two prospective jurors were properly excused for cause under Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968) and Lockett v. Ohio, 438 U. S. 586 (98 SC 2954, 57 LE2d 973) (1978). This did not deprive the appellant of his right to a jury selected from a representative cross-section of the community. *Bowen v. State,* 244 Ga. 495 (3) (260 SE2d 909) (1979).

8. The trial judge did not commit error in refusing to strike for cause a prospective juror who stated on voir dire that he believed the burden of proof on the state to be too high, in that this prospective juror further stated that he could lay aside his personal opinions as to the burden of proof that the state had to bear and follow whatever instructions the trial court might give him as to the burden of proof.

9. The photographic array shown to Sabrina Williams by the police was not impermissibly suggestive. Therefore, the trial judge did not err in overruling the appellant's motion to suppress Sabrina's pretrial identification of the appellant from the photographic array. *McClesky v. State,* 245 Ga. 108 (2) (263 SE2d 146) (1980); *Gravitt v. State,* 239 Ga. 709 (4) (239 SE2d 149) (1977).

Nor can we say that the trial judge committed error in allowing a photograph of the appellant to be introduced as an exhibit at trial, in that the trial judge found that this was the photograph which Sabrina Williams had picked out of the photographic array.

10. The trial judge did not abuse his discretion in admitting transcripts of pretrial statements given by the appellant to the police. United States v. Wilson, 578 F2d 67 (5th Cir. 1978).

Defense counsel sought to have tape recordings of these statements admitted in lieu of the transcripts, because the defense asserted that the voice inflections of the appellant and those conducting the interrogation would reveal the confusing nature of the interrogation. The tapes were played to the jury, but portions of the tapes were unintelligible. The trial judge then allowed the transcripts to be read into evidence. No objection was made by defense counsel at trial. We find no abuse of discretion on the part of the trial court in admitting the transcripts.

11. The trial judge's failure to give the appellant's request to charge under *Williams v. State,* 11 Ga. App. 662 (75 SE 988) (1912), was not error.

*Williams* holds that without corroboration one cannot be convicted of a crime upon hearsay testimony as to statements of a child who is incompetent as a witness because too young to appreciate the nature and sanctity of the oath. In this case, there is corroboration of Sabrina Williams' testimony and her pretrial statements. In addition, she was not found to be incompetent as a witness. Therefore, the pronouncements of law in *Williams* are not correct statements of law as applied to the facts of this case. Accordingly, the trial judge did not err in refusing to give the request to charge. *Dampier v. State,* 245 Ga. 427 (265 SE2d 565) (1980).

12. Since the appellant's other requests to charge were given in substance by the trial judge, the failure to charge in exactly the language requested was not error. E.g., *Mason v. State,* 236 Ga. 46 (5) (222 SE2d 339) (1976).

13. The trial judge did not abuse his discretion in admitting in evidence at the presentence hearing, photographs depicting the injuries to the victim. E.g., *Tucker v. State,* 245 Ga. 68 (263 SE2d 109) (1980); *Mooney v. State,* 243 Ga. 373 (254 SE2d 337) (1979).

14. The trial judge correctly charged the jury on mitigating circumstances at the presentence hearing. See *Hance v. State,* 245 Ga. 856 (268 SE2d 339) (1980); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979).

15. Imposition of the death penalty on circumstantial evidence alone is not unconstitutional. *Douthit v. State,* 239 Ga. 81 (6) (235 SE2d 493) (1977), cert. denied, Douthit v. Georgia, 445 U. S. 938 (1980).

The jury was charged on circumstantial evidence and the reasonable hypothesis rule pursuant to Code § 38-109. We agree that the evidence excludes every reasonable hypothesis save that of guilt.

16. The appellant's consecutive life sentences for rape and aggravated sodomy do not violate the Eighth Amendment's ban on cruel and unusual punishment. *Crawford v. State,* 236 Ga. 491 (224 SE2d 365) (1976).

17. Georgia's death penalty statute has been held on numerous occasions to be constitutional. Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976). *Willis v. State,* 243 Ga. 185 (10) (253 SE2d 70) (1979).

18. The method of execution in this state does not constitute cruel and unusual punishment. *Collier v. State,* 244 Ga. 553, supra, (18).

19. The trial judge did not err in admitting the evidence concerning Alphonso Swinton. The evidence introduced included proof that the hair found on the victim could have come from the appellant's arm, but could not have come from Swinton's arm.

Swinton was the appellant's roommate. In order for the state to prove its case against the appellant, it was necessary for the state to exclude the possibility that Swinton, who also had access to the murder weapon, could have committed the murder. The evidence concerning Swinton was, therefore, relevant to the issue of the appellant's guilt or innocence of the murder charge.

### Sentence Review.

From a review of the record and transcript, we conclude that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

In this case, the evidence shows that the appellant brutally murdered a six-year-old girl through the infliction of multiple stab wounds. Prior to being killed, the victim was raped and sodomized. Her vagina, rectum, as well as other parts of her body, were severely bruised and bleeding; her lips were torn from her teeth (lacerations or tears of her lips); and it took approximately 30 minutes after the infliction of a deep stab wound to her chest for her to bleed to death. From the evidence, the jury was fully authorized in finding that the murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." See generally *Hance v. State,* 245 Ga. 856, supra. The verdict is factually substantiated.

In reviewing the death penalty in this case, we have considered cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. We find that the following similar cases listed in the appendix support the affirmance of the death penalty in this case. The appellant's sentence to death for murder is not excessive or disproportionate, considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur, except as to Divisions 5 and 15, Hill, P. J., concurs specially. Gregory, J., not participating.*

DECIDED JANUARY 27, 1981 — REHEARING DENIED FEBRUARY 24, 1981.

*Howard A. McGlasson, Jr.,* for appellant.

*Andrew J. Ryan III, District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Presnell v. State,* 241 Ga. 49 (243 SE2d 496) (1978); *Griggs v. State,* 241 Ga. 317

(245 SE2d 269) (1978); *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979); *Bowen v. State,* 244 Ga. 495 (260 SE2d 909) (1979); *Patrick v. State,* 245 Ga. 417 (265 SE2d 553) (1980); *Thomas v. State,* 245 Ga. 688 (266 SE2d 499) (1980); *Hill v. State,* 246 Ga. 402 (271 SE2d 802) (1980); *Cape v. State,* 246 Ga. 520 (272 SE2d 487) (1980).

HILL, Presiding Justice, concurring specially.

I concur specially as to Divisions 5 and 15.

(5) Although the state is not required to serve a defendant with notice of the statutory aggravating circumstance it intends to prove, *Bowden v. Zant,* Division 15C, supra, the state is required to make known to the defendant prior to the beginning of the trial the additional *evidence* it will introduce in aggravation of punishment during the sentencing phase of trial. Code § 27-2503. I therefore concur in Division 5 of the majority opinion in this case. See *Bowden v. Zant,* supra, Hill, J., concurring specially, 244 Ga. at 265.

(15) In this case the evidence is circumstantial as to the defendant's guilt, not as to the aggravating circumstance. Compare *Douthit v. State,* 239 Ga. 81 (6) (235 SE2d 493) (1977). The evidence as to the aggravating circumstance was direct (multiple stab wounds, etc.). Thus, in this case the circumstantial evidence issue directly affects only the defendant's conviction.

Convictions based upon circumstantial evidence are not unconstitutional, so long as ". . . the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of . . . guilt. . . .," Code § 38-109, and so long as, after viewing the evidence in the light most favorable to support the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See Divisions 1 and 15 of the majority opinion.

Like this court, other courts have affirmed death penalties where the evidence of guilt was circumstantial. State v. Peery, 199 Neb. 656 (261 NW2d 95, 100) (1977), cert. den. 439 U. S. 882 (99 SC 220, 58 LE2d 194) (1978); Thomas v. State, 374 S2d 508, 513 (Fla. 1979), cert. den. 445 U. S. 972 (1980); State v. Carriger, 123 Ariz. 335 (599 P2d 788) (1979), cert. den. 444 U. S. 1049 (1980).

I therefore concur in Division 15 of the majority opinion.