## S91A0524. NELSON v. ZANT.
### (405 SE2d 250)

BELL, Justice.

Gary Nelson appeals from the denial of his petition for writ of habeas corpus. Nelson's conviction and death sentence originally were affirmed by this court on direct appeal in Nelson v. State, 247 Ga. 172 (274 SE2d 317) (1981). As noted in the opinion, the conviction was based upon circumstantial evidence: A ten-year-old friend of the victim saw the victim at Nelson's residence shortly before the victim was murdered; a hair found on the victim was consistent with that of Nelson; a knife found near the scene could have been in Nelson's possession. Soon after our original affirmance, Nelson filed a state habeas corpus petition. In Count One of his petition, Nelson contended the evidence was not sufficient to support the conviction. The habeas court severed Count One, ruling that a hearing would be held on Count One only and that Nelson was relieved from any responsibility to conduct discovery or otherwise prepare for trial on any of the other issues. Following a hearing, the habeas court granted relief on Count One. The state appealed, and we reversed, holding that the evidence was sufficient to support the conviction. Zant v. Nelson, 250 Ga. 152 (296 SE2d 590) (1982). We remanded the case to the habeas court for resolution of the remaining issues. The matter finally was heard on August 15, 1989. The day before the hearing, Nelson filed an amended petition, fleshing out previous claims and adding new ones based, according to Nelson, on matters learned only as a consequence of the lengthy discovery process. The state objected to the amendments to the petition, and the habeas court refused to consider them. After hearing, the court denied relief. We reverse the court's refusal to consider the amendments and denial of relief.

1. In Johnson v. Caldwell, 229 Ga. 548 (192 SE2d 900) (1972), this court held:

that the Civil Practice Act [presently codified at OCGA §§ 9-11-1 through 9-11-132] applies to habeas corpus proceedings insofar as questions arise therein regarding the sufficiency of

pleadings, the admissibility of evidence under the petition as drawn, *amendments*, and those other elements of pleading and practice enumerated in § 81 of the Act as amended. [Emphasis supplied.] [Id. at 552.]

We have continued to adhere to our decision in *Johnson v. Caldwell*, supra, observing in *Giles v. Ford*, 258 Ga. 245 (1) (368 SE2d 318) (1988), that, in habeas corpus proceedings, "the CPA governs the sufficiency of pleadings, admissibility of evidence under the petition as drawn and *amendments* to the petition." (Emphasis supplied.)

Accordingly, the CPA governs whether or not Nelson's amended petition should have been allowed and considered.

2. The state contends Nelson lost his right to amend the petition, raising essentially two grounds: (a) there was a hearing on Count One of the petition that resulted in a final judgment, i.e., the grant of habeas relief "in its entirety," and (b) the amendment was filed almost eight years after the original petition was filed.

The CPA provides that a party "may amend his pleading as a matter of course and without leave of court at any time before entry of a pretrial order." OCGA § 9-11-15 (a). Absent a pretrial order, this "unfettered right to amend" ceases only when the trial begins. *Jackson v. Paces Ferry Dodge*, 183 Ga. App. 502, 503 (359 SE2d 412) (1987).

In this case, the habeas judge did hear and dispose of Count One of the petition, but specifically reserved all other issues, stating in his written order of February 25, 1982:

(d) Pending further order of Court, counsel for the petitioner and counsel for the respondent are hereby relieved from the obligation of conducting any discovery or otherwise preparing for a hearing on the merits of petitioner's claims for relief under Counts Two through Twenty of his petition for writ of habeas corpus; if the Court denies petitioner's claim for relief under Count One of the petition, the Court will allow the parties a reasonable time to conduct discovery and otherwise prepare for a hearing on petitioner's claims for relief under Counts Two through Twenty.

Since the order granting relief on Count One was reversed on appeal, all the other issues remained "still pending" and Nelson was entitled to amend his petition as of right at any time before the hearing on these remaining issues. *Stokes v. Stokes*, 246 Ga. 765 (1) (273 SE2d 169) (1980); *Price v. Price*, 243 Ga. 4, 5 (252 SE2d 402) (1979); *Ellington v. Tolar Constr. Co.*, 142 Ga. App. 218 (235 SE2d 729) (1977).

While we do not approve of the eight-year delay that occurred between filing the petition and the amendment, we cannot accept the state's implication that Nelson is solely responsible for the delay. Moreover, delay in and of itself is not a justification for refusing to consider an amendment to a petition, so long as it precedes both the hearing on the issues and the entry of a pretrial order, which either party may insist on. See *Smith v. Davis*, 121 Ga. App. 704 (175 SE2d 28) (1970), and OCGA § 9-11-16 (pretrial conference and order mandatory if sought by either party).

The habeas court erred by refusing to consider Nelson's amended petition.

3. It is not necessary that we remand this case to the habeas court for consideration of the amended petition, however. Nelson is entitled to relief based on his original petition and the evidence considered by the court.

As we have twice noted, the evidence in this case was circumstantial. *Zant v. Nelson*, supra, 250 Ga.; *Nelson v. State*, supra, 247 Ga. A critical item of evidence was a hair found on the victim's body. According to testimony by the state's expert witness, the hair not only could have come from Nelson, it could only have come from about 120 people in the entire Savannah area.

Unknown to the defense at the original trial, the hair sample had been examined not just by the expert who testified for the state at trial but also by the FBI crime laboratory. The FBI concluded, in a report dated April 5, 1978, that the state's hair sample "is not suitable for significant comparison purposes." The FBI supervisor who approved this report (then the unit chief of the Microscopic Analysis Unit of the FBI Laboratory in Washington, D.C.) explained in this habeas proceeding that limb hairs are unsuitable for comparison purposes. Limb hairs, he testified, in contrast to head hairs and pubic hairs "lack sufficient individual microscopic characteristics to be used for significant comparison purposes," and "are so fine and small" that they are unsuitable either to include or to exclude a particular individual as the source of the hair. He testified:

> The state of the art of limb hair comparisons, both at the time of trial and today, simply does not support . . . [the] attempt [of the state's witness] to associate the limb hair found on the victim with Mr. Nelson.

The state concedes that the FBI's report and conclusions were in the prosecutor's file and does not contend that the report was unknown to the prosecutor at the time of the trial. However, the state points out that it is obliged only to disclose evidence that is material, see *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215)

(1963), and contends the nondisclosed FBI report is not "material" because it "does not establish" that the state's expert witness was incorrect, but simply that two experts disagree about the value of a comparison that is not conclusive in any event.

In another case we might agree. In this case, the hair comparison testimony at trial was an important circumstance in a circumstantial-evidence case. See *Zant v. Nelson*, supra, 250 Ga. at 154-155 (summarizing the evidence supporting the verdict). If the FBI report had not been suppressed, Nelson could have countered the state's hair-comparison testimony with credible expert testimony that the limb hair at issue was unsuitable for comparison purposes and had no probative value at all. We think there is a reasonable probability that if the jury had been exposed to such rebuttal testimony, the result of the proceeding would have been different.

> [E]vidence favorable to the accused . . . is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. [*United States v. Bagley*, 473 U. S. 667, 682 (105 SC 3375, 87 LE2d 481) (1985).]

Although the jury in this case might have arrived at the same verdict if the state had not suppressed this critical evidence, we find there is a reasonable probability that the jury would have not done so. We conclude that the FBI report was material and that the state's suppression of the report denied Nelson a fair trial.

4. Nelson also contends that the prosecutor suppressed evidence that another person had confessed to the crime, suppressed prior statements by the witness who saw the victim and the defendant together shortly before the crime,[1] and suppressed prior statements by the defense witness who testified he could not identify the knife found 17 feet from the body.[2] Since Nelson is entitled to habeas relief

---

[1] This witness was unable to identify Nelson in court; in fact, she testified he was not the man she saw with the victim. However, she had identified Nelson before trial from a photographic display, and she testified at trial that the photograph she had selected was that of the man she saw the victim with soon before the crime occurred. A police officer testified that she had "readily identified" the defendant's photograph as that of the man she had seen with the victim. Nelson contends the transcript of the officer's pretrial interview of this witness — which was not furnished to him until after the trial was over — contradicts the officer's trial testimony that she "readily identified" the defendant's photograph. In addition he contends the undisclosed transcript shows the witness had returned to her home before 7:00 p.m., while statements from other witnesses (also not provided to Nelson until after trial) show that the victim was seen alive after 7:00 p.m. at a neighborhood store.

[2] The state called a police officer who testified in rebuttal that the witness had stated he

on other grounds and since he now has been provided this information prior to any retrial of the case, these claims and all remaining claims are moot.[3]

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 25, 1991.

*Bondurant, Mixson & Elmore, Emmet J. Bondurant II, Edward B. Krugman, James W. Kimmell, Jr., L. Suzanne Forbis,* for appellant.

*Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Senior Assistant Attorney General,* for appellee.

---

"possib[ly]" could identify the knife if there was a "toothpick" in it. The officer testified that he thereafter opened the knife and discovered it had a "toothpick" in it. Nelson contends that the transcript of the officer's pretrial interview of this witness, which was not provided to him until after this habeas proceeding began, contradicts the officer's testimony.

[3] Included in these claims is a contention that Nelson's trial counsel was ineffective. His trial counsel has since been disbarred and now resides in New York.