30338. MASON v. THE STATE.

UNDERCOFLER, Presiding Justice.

This appeal is from a conviction of murder and sentence of death. The indictment was returned at the January term, 1975. The trial began on January 21, 1975. The sentence was entered on January 22, 1975.

On September 2, 1974, about 12:30 p. m., James Copeland drove Guy Mason (the appellant) and Annie Ruth May (the victim) from their residence to her mother's home. The appellant had two pistols in his possession and gave one of them to the victim. Copeland next saw them at Oscar Davis' Place at approximately 2:30 p. m. that same day in Baldwin County, Georgia.

The testimony concerning the events occurring in Oscar Davis' Place and in the street immediately preceding the death is to some degree in conflict. Copeland testified that the victim was arguing with several people, including the appellant. There is some indication that appellant wanted to leave Oscar Davis' Place, but the victim was not ready. Subsequently, the victim told the appellant that she was ready to go. Appellant left the place first followed by the victim.

The victim's mother, Geneva Simmons, testified that she was present at Oscar Davis' Place but saw nothing of any consequence occur between appellant and the victim. Appellant testified that the victim had threatened to kill him while they were there. Mary Lee Curry also heard the victim threaten appellant.

J. L. Hitchcock was less than 100 feet from the appellant and the victim when he observed them walk out

to the street. Mr. Hitchcock had never seen appellant or the victim before. He had an unobstructed view of the couple as they entered the street. Mr. Hitchcock saw that the victim's hands were down by her side and saw appellant pull a pistol from his right pocket and fire at the victim four times. They were facing each other as the victim moved backwards and the appellant advanced.

James Dennis testified that he heard a lady cursing and saw her reach under her sweater and pull out a pistol. At that time the man accompanying the lady shot her. Appellant testifies that after they left Davis' Place he had walked ahead two or three steps, when he turned and saw the victim reach into her bosom and bring out a pistol so that the handle, not the barrel, was visible. He then "went to shooting just like that, how many times I shot I don't know." Appellant further testified that Linda Diane was also with them when he shot the victim. However, James Copeland testified that Linda Diane was with him in Oscar Davis' Place when the victim was shot.

When the shots were fired, Daisey Mae Powell (the victim's sister) ran into Oscar's Place and stated that appellant had just shot Annie Ruth May. James Copeland ran to the scene and removed a pistol (state's exhibit no. 4) from the victim's bosom and placed it in his belt. James Dennis testified for the appellant that he saw some man remove the pistol from the victim's hand.

Upon arriving at the scene after a call at 3:54 p. m., Officer Thomas Aycock found the victim lying approximately 150 feet from Oscar Davis' Place. She had gunshot wounds in the temple area of her head and the upper part of her right leg.

Appellant surrendered to the sheriff about 5:00 p. m. on September 2, 1974. He entered the sheriff's office with a pistol in his hand and stated that he had just shot Annie Ruth May.

The pistol allegedly carried by the victim was recovered from a pool room where it had been pawned by James Copeland. *Held:*

1. There was sufficient evidence to support the verdict.

2. There was no error in charging that, "The law presumes that a person intends to accomplish the natural

and probable consequences of his act and if a person uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily employed to produce death and thereby causes the death of a human being, the law presumes the intent to kill." *Kramer v. State,* 230 Ga. 855 (199 SE2d 805) (1973). *Jordon v. State,* 232 Ga. 749, 754 (208 SE2d 840) (1974) is inappropriate since here the state's evidence did not show mitigating circumstances, justification, or alleviation.

3. There was no error in failing to charge that the presumption raised by the charge in Division 2 was rebuttable. *Wilson v. State,* 233 Ga. 479, 481 (211 SE2d 757) (1975).

4. The appellant contends the court erred in not charging the jury on voluntary manslaughter as it relates to mutual combat.

The trial court fully and fairly charged the jury on murder, voluntary manslaughter, justifiable homicide, and Code Ann. § 26-902 (a) (Ga. L. 1968, pp. 1249, 1272), which covers situations involving mutual combatants. *Wilson v. State,* supra.

This enumeration of error is without merit.

5. The trial court did not err in denying appellant's request to charge number 11 concerning the evidence of the victim's reputation as it might relate to appellant's belief that an attack upon him would be felonious and request to charge number 21 concerning reasonable doubt. These theories are encompassed in the trial court's charge and it was not error to fail to charge in the exact language requested. *Young v. State,* 226 Ga. 553 (5) (176 SE2d 52) (1970); *McClendon v. State,* 231 Ga. 47 (4) (199 SE2d 904) (1973).

6. In enumeration of error number 9, appellant alleges the court erred in refusing to give the following requested charge: "Members of the jury, I charge you that if you believe from the evidence that the officers making the investigation of the alleged homicide arrived at the scene to find assembled a large number of people, and prior to their arrival certain persons had an opportunity to dispose of certain evidence or to tamper with certain evidence, then you should consider this fact in arriving at your verdict."

This request is apparently directed to James Copeland's testimony that he ran to the location where the victim was lying and removed a pistol from the blouse of the victim. Appellant contends that Copeland removed the pistol from the victim's hand or at least from along side her; that Copeland's action made it impossible for the investigating officers to determine whether the victim was holding the pistol; and that the jury should have been specially instructed to consider these circumstances since it was "strong evidence that the appellant acted in self-defense." The jury was instructed that the true test in a criminal case is whether or not the evidence is sufficiently strong to satisfy their minds and consciences to a reasonable and moral certainty and beyond a reasonable doubt of the defendant's guilt. The jury heard James Copeland's testimony concerning the circumstances surrounding the pistol. The trial court did not err in refusing to isolate these circumstances for special instructions when it was to be considered by the jury like any of the other evidence admitted for their consideration.

This contention is not meritorious.

7. Appellant contends the trial court erred in denying his motion for mistrial because of the following improper argument of the district attorney in the sentencing phase of the trial: "Ladies and gentlemen, we must keep our streets safe for society. This man has killed once before and if we let him live, he may get out on our streets and kill again. We must show to all people coming into this county that the citizens of this county will not put up with this kind of conduct."

Appellant's contention is without merit. *Tamplin v. State,* 235 Ga. 20 (218 SE2d 779) (1975); *Chenault v. State,* 234 Ga. 216, 223 (7) (215 SE2d 223) (1975).

8. The appellant contends that the court erred in charging the jury that the 1956 conviction for murder was a capital felony.

The appellant had been tried and convicted for the offense of murder and sentenced to life imprisonment in 1956. The trial court instructed the jury during the pre-sentencing phase of the trial, in part as follows: "The death penalty may be imposed if the offense of murder was

committed by a person with a *prior record of conviction for a capital felony*." (Emphasis supplied.) The question is not whether murder in 1956 would now be a capital felony under Furman v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346) (1972) as argued by appellant. The question is whether appellant has a prior record of conviction for a capital felony. The evidence shows that he does and his contention is without merit.

9. Appellant attacks the constitutionality of the Georgia Death Penalty Statute as violative of the eighth and fourteenth amendments to the United States Constitution. (Enumeration 13).

This attack upon the constitutionality of the 1973 death penalty procedure (Ga. L. 1973, p. 159) is without merit. *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12) (1974); *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974). Determination of the constitutionality of the application of the death penalty to appellant will be considered on sentence review.

10. The trial court did not err in not reducing the sentence to life imprisonment. Code Ann. § 26-3102 (Ga. L. 1973, pp. 159, 170) provides in part, "Where a statutory aggravating. circumstance is found and a recommendation of death is made, the court shall sentence the defendant to death." Code Ann. § 27-2514 provides in part: "Upon a verdict or judgment of death made by a jury or a judge, it shall be the duty of the presiding judge to sentence such convicted person to death and to make such sentence in writing . . ." Ga. L. 1973, pp. 159, 171.

The trial court does not have the discretion to reduce the sentence to life imprisonment.

11. Appellant's final contention that the trial court erred in sentencing appellant to death is considered by this court in the sentence review.

Sentence Review

The death penalty in this case must conform to the

standards set out in Code Ann. § 27-2534.1 (Ga. L. 1973, pp. 159, 163), if it is to pass the test of constitutionality. Additionally, this court must determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the jury's finding of a statutory aggravating circumstance; and whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, as required by Code Ann. § 27-2537 (c) (1-3).

In accord with the statute, we have reviewed the trial transcript and record, including the evidence, and we have made a comparison with the sentences in similar cases. The similar cases considered by the court in reviewing this case are listed in an appendix attached to this opinion.

We conclude that the sentence of death imposed here was not imposed under the influence of passion, prejudice or any other arbitrary factor.

In recommending the death penalty the jury found as follows: "He has been convicted for murder prior to this conviction." Code Ann. § 27-2534.1 (b) (1).

The evidence supports the jury's finding of a statutory aggravating circumstance. After considering both the crime and the defendant and after comparing the evidence and the sentence in this case with those of previous murder cases, we are also of the opinion that this sentence of death is not excessive or disproportionate to the penalties imposed in similar cases which are hereto attached.

The death sentence is affirmed.

*Judgment affirmed. All the Justices concur, except Gunter, J., who dissents.*

ARGUED OCTOBER 6, 1975 — DECIDED JANUARY 7, 1976 — REHEARING DENIED JANUARY 27, 1976.

*George M. Stembridge, Hugh P. Thompson,* for appellant.

*Joseph H. Briley, District Attorney, Arthur K. Bolton,*

*Attorney General, Kirby G. Atkinson, Staff Assistant Attorney General,* for appellee.

Appendix.

Similar cases considered by the court: *Henderson v. State,* 227 Ga. 68 (179 SE2d 76); *Pass v. State,* 227 Ga. 730 (182 SE2d 779); *Watson v. State,* 229 Ga. 787 (194 SE2d 407); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431); *Sirmans v. State,* 229 Ga. 743 (194 SE2d 476); *Scott v. State,* 230 Ga. 413 (197 SE2d 338); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99); *Howard v. State,* 231 Ga. 186 (200 SE2d 755); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441); *Morgan v. State,* 231 Ga. 280 (201 SE2d 468); *House v. State,* 232 Ga. 140 (205 SE2d 217); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223).