Guy **MASON**, Petitioner-Appellant,

v.

Charles R. **BALKCOM**, Warden, Respondent-Appellee.

No. 80–7344.

United States Court of Appeals, Fifth Circuit.*
Unit B

March 1, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

James C. Bonner, Jr., University of Georgia School of Law, Prison Legal Counseling Project, Athens, Ga., for petitioner-appellant.

William B. Hill, Jr., Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before TUTTLE, HILL and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

Petitioner, Guy Mason, appeals from the district court's order and judgment denying his petition for a writ of habeas corpus. We reverse.

In January 1975, petitioner was convicted of murder and sentenced to death after a jury trial in the Superior Court of Baldwin County, Georgia.[1] On direct appeal and the mandatory sentence review,[2] petitioner's conviction and sentence were affirmed by the Georgia Supreme Court, *Mason v. State*, 236 Ga. 46, 222 S.E.2d 339 (1976), and certiorari was denied by the United States Supreme Court, *Mason v. Georgia*, 428 U.S. 910, 96 S.Ct. 3225, 49 L.Ed.2d 1219 (1976).

Petitioner subsequently petitioned for a writ of habeas corpus in the Superior Court of Tattnall County, Georgia. The state habeas action was continued to permit petitioner to file an extraordinary motion for a

---

1. The facts underlying Mason's conviction are set forth in the opinion issued by the Georgia Supreme Court on Mason's direct appeal. *Mason v. State*, 236 Ga. 46, 46–47, 222 S.E.2d 339, 340–41, *cert. denied*, 428 U.S. 910, 96 S.Ct. 3225, 49 L.Ed.2d 1219 (1976).

2. Under Georgia's capital sentencing procedure, all death sentences must be reviewed by the Georgia Supreme Court. Ga.Code Ann. § 27–2537.

new trial in the Baldwin County Superior Court. Following an evidentiary hearing, the motion was denied on March 18, 1977. On appeal, the Georgia Supreme Court affirmed the denial of the extraordinary motion. *Mason v. State,* 239 Ga. 538, 238 S.E.2d 79 (1977). On January 26, 1978, an evidentiary hearing commenced on petitioner's state habeas action in the Tattnall County Superior Court. That court denied habeas relief in an order and written opinion entered on July 13, 1978. *Mason v. Hopper,* No. 76–218 (Super.Ct. Tattnall Cty., July 13, 1978). From the adverse decision of the state habeas court, petitioner filed an application for a certificate of probable cause to appeal to the Georgia Supreme Court. The certificate was denied on October 3, 1978.

Petitioner next filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Georgia pursuant to 28 U.S.C. § 2254. The district court ordered petitioner's execution stayed pending final resolution of the habeas action. On April 7, 1980, the district court denied the petition for the writ but left intact the stay of execution. *Mason v. Balkcom,* 487 F.Supp. 554 (M.D.Ga.1980). Petitioner now appeals to this court from the district court's denial of his petition.

Five issues are raised on this appeal. Petitioner contends (1) that the trial court's instructions to the jury created a presumption of intent to kill, thereby unconstitutionally relieving the state of its burden of proving an essential element of the crime of murder and depriving petitioner of due process of law, and that the erroneous charge cannot be dismissed as harmless error; (2) that the trial court's instructions on voluntary manslaughter impermissibly created a presumption of "deliberate revenge" without regard to petitioner's actual thought processes, thus depriving him of due process by relieving the state of its burden of proof; (3) that a venireman was improperly excluded from service on the jury on less than an "unmistakably clear" indication that his opposition to capital punishment would automatically impair his ability to consider a death sentence; (4)

that his conviction and sentence cannot stand because one of the jurors, prior to the conclusion of the guilt phase of the trial, became aware through newspaper accounts that petitioner had been convicted of murder previously; and (5) that his death sentence cannot stand because the record lacks a transcript of the prosecutor's closing argument, portions of which provoked objection, making it impossible for a reviewing court to determine whether the argument was unfairly prejudicial to the petitioner.

For the reasons expressed below, we reverse. In so doing, however, we reach only the first issue because its disposition makes resolution of issues (2), (3), (4), and (5) unnecessary.

Petitioner was convicted of murder under Ga.Code Ann. § 26–1101(a), which provides:

A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears, and where all the circumstances of the killing show an abandoned and malignant heart.

The statute defines murder to consist of the following elements: (1) unlawfully (2) causing the death of another human being (3) with malice aforethought. *Holloway v. McElroy,* 474 F.Supp. 1363, 1368 (M.D.Ga. 1979). Malice is defined as a "deliberate intention" unlawfully to kill another human being. Thus, because malice is an element of murder and deliberate intention to kill is an essential part of malice, intent to kill is an essential element of the crime of murder under Ga.Code Ann. § 26–1101(a). Under the due process clause of the fourteenth amendment, the state must prove the existence of every element of a criminal offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The prosecution therefore had the

burden to prove beyond a reasonable doubt that petitioner had the requisite intent to kill.

Petitioner contends that certain instructions given to the jury by the trial court had the effect of relieving the prosecution of this burden by creating a presumption of his intent to kill. The instructions at issue here are as follows:

I charge you that the law presumes that a person intends to accomplish the natural and probable consequences of his conduct, and where a person uses a deadly weapon in the manner in which such weapons are ordinarily employed to produce death, thereby causing the death of a human being the law presumes an intention to kill.

I further charge you that if you believe beyond a reasonable doubt that the defendant . . ., with the weapon named in the indictment, and with malice aforethought, either expressed or implied, did unlawfully kill the victim . . ., and you believe the weapon used in the manner used, if one was used, was one likely to produce death, then you would be authorized and it would be your duty to convict the defendant of the offense of murder.

The district court, relying primarily on *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), found that these instructions "impermissibly shifted the burden of proof on the issue of intent to kill to the defendant or at least removed from the prosecution the full burden resting upon it under *In re Winship*." 487 F.Supp. at 559. The district court went on to hold, however, that the erroneous charge was harmless beyond a reasonable doubt.

Petitioner, of course, agrees with the district court's finding that the charge erroneously shifted the burden of proof to him on the issue of intent to kill, but argues that the district court incorrectly held the erro-

neous charge to be harmless error. Respondent, on the other hand, first contends that the instructions in question did not shift the burden of proof to the petitioner on the issue of intent. Alternatively, respondent takes the position that if the charge did shift the burden to petitioner, then the district court correctly concluded that the error was harmless beyond a reasonable doubt. Thus, our analysis of this issue is twofold: (1) Did the instructions in question shift the burden of proof to the petitioner on the issue of intent to kill in violation of the due process clause of the fourteenth amendment? (2) If so, can the erroneous charge be characterized as harmless error beyond a reasonable doubt?

This case is very similar to *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).[3] In *Sandstrom*, the defendant was convicted under Montana law of "deliberate homicide," which the statute defined as "purposely or knowingly" causing the death of another human being.[4] The state conceded that "purpose" was equivalent to "intent," and thus that proof of defendant's intent to kill would suffice to establish the "purpose" element. *Id.* at 521 & n.11, 99 S.Ct. at 2458 & n.11. The trial court instructed the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The Supreme Court held that this instruction was unconstitutional because it "had the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind." *Id.* at 521, 99 S.Ct. at 2458.

In *Sandstrom*, the state argued that the Montana Supreme Court had exclusive authority to determine the effect of the presumption. The state supreme court had held that the instruction placed only a burden of producing *some* evidence on the defendant, and that the presumption thus affected only the burden of going forward

---

**3.** When petitioner's conviction was reviewed on direct appeal in 1976, the Georgia Supreme Court held that the instructions in question were not erroneous. *Mason v. State*, 236 Ga. 46, 47–48, 222 S.E.2d 339, 341 (1976). That ruling was made, however, without the benefit

of the United States Supreme Court's reasoning in *Sandstrom*, which was not decided until 1979.

**4.** 1947 Mont.Rev.Codes §§ 94–5–101, –102 (Crim.Code 1973).

with the evidence rather than the burden of persuasion. The Supreme Court conceded that the state supreme court was the final authority on the effect of a presumption under state law, but declared that the state court was "not the final authority on the interpretation which a jury could have given the instruction." 442 U.S. at 516–17, 99 S.Ct. at 2455. The Court then found that, although the instruction could be interpreted in the manner suggested by the state, it could also be interpreted in two more stringent ways, neither of which passed constitutional muster:

> First, a reasonable jury could well have interpreted the presumption as "conclusive," that is, not technically a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent.

442 U.S. at 517, 99 S.Ct. at 2456. The Court held that either of these two interpretations would have "the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind ... and that the instruction therefore represents constitutional error," 442 U.S. at 521, 99 S.Ct. at 2458,

notwithstanding the fact that the trial court had given other instructions that correctly stated the state's burden of proof.[5]

We agree with the district court's conclusion that the instructions at issue in this case fall clearly within the proscription announced in *Sandstrom*. Petitioner was convicted of murder, an essential element of which is intent to kill. The trial court instructed the jury that "the law presumes that a person intends to accomplish the natural and probable consequences of his conduct" and that "where a person uses a deadly weapon ... thereby causing the death of a human being the law presumes an intention to kill." In asserting self-defense, petitioner was required to admit the facts that activated these presumptions. We believe that a reasonable jury could have interpreted the instructions in either of the impermissible ways described in *Sandstrom*. Therefore, we hold that the challenged instructions relieved the State of Georgia of its constitutional burden of proving every element of the crime of murder beyond a reasonable doubt. Accordingly, petitioner's conviction and sentence must be set aside unless the erroneous charge was harmless beyond a reasonable doubt.

■■■ "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). In determining whether such an error is harmless, the question is whether the error might have contributed to the conviction. *Id.* at 23, 87 S.Ct. at 827. It is conceivable that an error

---

**5.** The potential for these interpretations of the presumption was not removed by the other instructions given at the trial. It is true that the jury was instructed generally that the accused was presumed innocent until proven guilty, and that the State had the burden of proving beyond a reasonable doubt, that the defendant caused the death of the deceased purposely or knowingly.... But this is not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be

satisfied. For example, if the presumption were viewed as conclusive, the jury could have believed that although intent must be proven beyond a reasonable doubt, proof of the voluntary slaying and its ordinary consequences constituted proof of intent beyond a reasonable doubt. Cf. *Mullaney v. Wilbur*, 421 U.S. 684, 703 n. 31, 95 S.Ct. 1881, 1892, 44 L.Ed.2d 508 (1975) ("These procedural devices require (in the case of a presumption) ... the trier of fact to conclude that the prosecution has met its burden of proof with respect to the presumed ... fact by having satisfactorily established other facts.").
442 U.S. at 518–19 n.7, 99 S.Ct. at 2456 n.7.

such as that involved here could be harmless beyond a reasonable doubt under certain circumstances. Indeed, the Supreme Court in *Sandstrom* expressly stated that the Montana Supreme Court was free on remand to consider the harmless error issue. 442 U.S. at 526–27, 99 S.Ct. at 2461. Although a burden-shifting charge might be harmless given appropriate circumstances, however, this is not such a case.

■ Constitutional error might be held harmless beyond a reasonable doubt, for example, where the evidence of guilt is so overwhelming that the error could not have been a contributing factor in the jury's decision to convict. *See, e.g., Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The case under review, however, cannot be so characterized. Although it is clear that petitioner shot and killed the victim, he claimed that he acted in self-defense after he saw the victim reach into her bosom and bring out a pistol. The evidence was undisputed that at the time of the killing the victim had a handgun on her person. One eyewitness testified that he saw the victim reach under her sweater and pull out a pistol before petitioner began shooting. Another eyewitness, however, testified that the victim's hands were down by her side when the shooting occurred. This evidence, far from being overwhelming in favor of guilt, was in fact very much in dispute, and we cannot say that the unconstitutional presumption was not a contributing factor in the jury's decision to resolve the dispute against petitioner.

■ An unconstitutional, burden-shifting instruction might also be held harmless where it shifts the burden on an element that is not at issue in the trial. *See, e.g., United States v. Reeves*, 594 F.2d 536 (6th Cir.), *cert. denied*, 442 U.S. 946, 99 S.Ct. 2893, 61 L.Ed.2d 317 (1979). The district court, taking this approach, found that the challenged instructions were harmless beyond a reasonable doubt because, in its view, intent to kill *per se* was not at issue in petitioner's trial. The district court stated that:

The petitioner's only defense to the charges was self-defense. He thereby controverted only that the killing was unlawful and done with premeditation and deliberateness. The issue was not "intent to kill" per se but it was the lawfulness of the killing and of petitioner's intentions with respect thereto. Since the charge of the trial judge clearly imposed on the prosecution the burden of proving unlawfulness, premeditation and deliberateness beyond a reasonable doubt and these were the only disputed issues in the case, this court finds that the erroneous charge was harmless beyond a reasonable doubt....

487 F.Supp. at 559. Apparently, the district court believed that by raising self-defense the defendant admitted having the intent to kill. This analysis is too broad. When claiming self-defense, one does not necessarily admit intent to kill, but rather admits that the killing occurred. As the petitioner points out in his brief, one can shoot to kill in self-defense, shoot to wound in self-defense, shoot to frighten in self-defense, or even shoot reactively in self-defense with no specific purpose. The mere raising of self-defense clearly does not establish that the defendant had the intent to kill. That intent to kill was an issue in petitioner's trial is made evident by the district court's statement that petitioner "controverted only that the killing was ... done with premeditation and deliberateness." We see no meaningful distinction between "premeditation and deliberateness" and specific intent. A critical issue in petitioner's trial was whether he had the specific intent to kill, and the state had the burden of proving this intent beyond a reasonable doubt. We hold that the instructions which relieved the state of this burden might well have contributed to petitioner's conviction and thus cannot be dismissed as harmless error. Therefore, the district court must be reversed.

In view of our disposition of the preceding issue, we need not reach the other issues raised here by petitioner. For the reasons expressed in this opinion, the judgment of

the district court is REVERSED and this case is REMANDED to the district court for further proceedings not inconsistent with this opinion.

HILL, Circuit Judge, concurring specially:

I agree that we must reverse this case, but differ in my reasons.

*Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), compels the holding that the jury instruction impermissibly shifted the burden of proof of intent, *vel non*, to the petitioner. This is not to say that from a defendant's actions a jury might not draw an *inference* of intent; it is just that the prosecutor cannot use a *presumption* against a defendant, presumed innocent, to foreclose the issue.

I would adopt what the district judge wrote on harmlessness but for one omission from the record. Intent does not *appear* to have been in issue. As Judge Owens noted, intention to kill does not suffice to prove the case. The State is required to prove "... deliberate intention to kill a human being *without excuse, justification* or *mitigation*." The case apparently put to the jury for decision was whether or not excuse or justification was present. The erroneous instruction did not relate to that issue and did no harm to its proper resolution. I respectfully disagree with that part of the panel's opinion, referring to the defense of self defense, which says, "... we cannot say that the unconstitutional presumption was not a contributing factor in the jury's decision to resolve the dispute against petitioner." The resolution of the self defense claim would be the same whether petitioner's intent was to kill, wound or frighten.

Nothing appears before us to suggest that petitioner questioned the existence of intent to kill in claimed self defense. However, everything does not appear before us. Under unfortunate procedure then in use in Georgia[1] the argument of defense counsel

is not in the record. Summation is an important part of trial. It would be likely that petitioner's attorney pointed out that the evidence was consistent with intent only to frighten the victim or to disable him from further aggression. No matter that such an argument might have failed, defendant was entitled to have it asserted. We cannot know. If it were asserted, it would have been, under the erroneous charge, faced with a presumption that it was invalid. So the error has not been shown harmless beyond a reasonable doubt.

Therefore, I concur.

---

1. I am advised that counsel's arguments in such cases are now recorded and made a part of the record.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.